We're going to move to the second case, Curry v. Warden. Good morning, Your Honor. May it please the Court? This is Tyler McIntyre for Ms. Curry. Counsel, don't start talking before you've been acknowledged by the Court. I apologize. It's my first time, sir. I apologize. That's okay. I'd first like to make sure the courtroom is settled. Anyway, Mr. McIntyre, thank you. Go ahead and start. Your Honor, may it please the Court? Once more. There's a couple issues here that are paramount I'd like to talk about first, though. The January 31, 2017, trial transcript, we've asked that the record be amended to include that transcript. Frankly, Your Honor, it's dispositive as to her Sixth Amendment right to represent herself. I'll remind the Court that Ms. Curry said, Your Honor, can I ask you if I can represent myself? And the Court immediately responded, No, ma'am. At this point, I deny that. The problem is that wasn't before the State Court on Collateral Review, right? You're correct, Your Honor. It was not made part of the record. We're reviewing on habeas review, on federal habeas review, what happened in that State collateral proceeding. We go with the record that was before that court, right? You have the discretion, Your Honor. We're trying to decide whether that court entered a ruling that was contrary to or an unreasonable application of clearly established federal law. And we do that in fairness to the State Court by looking at the record that it had, right? Yes, Your Honor, you're correct. However, in Yonge v. City of Augusta, this Court has recognized that it has the inherent power to supplement the record, and it does so on a case-by-case basis. I think that... Yeah, I'm not sure that under 2254 that we have that power in this context. Your Honor, in Dickerson v. Alabama, there was a correction of the record in the habeas proceeding. In that instance, the State's record was not complete. They only had the course novum record, the 11th Circuit. I mean, the record of the State Court on collateral review is complete, as I understand it. What you want is to add something that was never before the State Court on collateral review. Isn't that right? We're wanting to add something that happened at the trial that should have been made part of the record by her counsel, who did not end up... On collateral review, but was not. It was not, correct, Your Honor. But again, we'd like to do that. As it's dispositive, Your Honor, it's crystal clear. It's a constitutional right that she has to represent herself. I would also say, Your Honor, that, again, just that this court has the power to do so and has done so in the past. Even if we took it, even if we were free to look at that, what happened, as I understand it, is, as the defendant said, Your Honor, can I ask you if I can represent myself? I think that's not a clear expression of a desire to represent yourself. It's a request. It's a question, can I do that? Your Honor, I think that... Can I ask you that? I think... And still no. Yes, sir. I think that's semantics, frankly. You know, Dorman is a case in the Eleventh Circuit where, you know, the courts recognize there's not a talismanic formula requiring that she have some sort of perfect announcement of her right, as long as it's clear and unambiguous. And the judge immediately recognized it. We have to consider, I guess, the series of events that led to that point, even if we're considering that one. I mean, there are still, I think, at least ten other times where it came up, and she hedged, usually, in her answer about whether she wanted to represent herself. So should we not also take that into account in determining whether she made this clear request? Your Honor, I think that at the point of her making the statement in January, that's when the judge should have gone into the Feretta conversation. He did not. He immediately denied it. If we're going to look at what happened six months later, you can still see in the record that she is referencing what happened in January. She's asked again because the counsel thrust upon her is not prepared. He admitted himself the day of trial. We are not prepared. That's a clear violation. She says that she had requested this in writing. And there's nothing, and you haven't even suggested there's anything missing from the record that would suggest that she did that. I mean, she says a lot of things. That doesn't mean that's what happened. Correct, Your Honor. I think she says I suggested in writing a week before. But she did specifically ask six months prior to. On that day, the judge gave her an impossible situation where she had to go forward at a murder trial that day, and then he remitted and said the next day. He gave her a position that she could not be prepared for. The judge had allowed the DA to have extra time. He had moved the trial date. There was no reason the judge couldn't provide her with enough time to prepare her own defense. She had never seen the evidence that was against her, although she had requested it multiple times. Her trial counsel had not honored her request to see the evidence, and she had asked the court to make him show her the evidence, and he never did. Let me ask it this way, okay? You started with wanting to add this to the record. I read 2254 D2 as requiring our review to be based on the evidence presented in the state court proceeding. Okay? That's quote, evidence presented in the state court proceeding. This wasn't. It wasn't presented in the state court proceeding on collateral review, which is what we're reviewing, the decision of the state court on collateral review. So if that's not before us, would you agree this claim fails? Absolutely not, Your Honor. It fails. It does not fail because the trial judge gave her an impossible situation. I will let you go forward. He finds her intelligent in waiving her right to counsel, but he makes her go. He says you can go forward, but you will be ready to go for a murder trial tomorrow, and you've never seen the evidence against you. He gave her an impossible situation, which effectively denies her the ability to represent herself. There's no reason it's arbitrary and capricious. There's no reason the judge couldn't have given her. I don't think the standard is to no vote or arbitrary and capricious. As you know, what we're doing is we're reviewing a decision of the state court to determine whether it's ruling that there wasn't a clear and unequivocal expression of a desire to represent herself, whether that was contrary to our unreasonable application of clearly established federal law, being decisions of the Supreme Court of the United States. And what I'd like for you to tell me is if we're not able to supplement the record because of 2254D2, what is it that tells me that there's been a decision of the state court that's contrary to or an unreasonable application of Supreme Court precedent? Your Honor, there has not been a case where a judge has made a condition that you can represent yourself and you must do it tomorrow. I think that's where this case is in. Well, you know, if what you're telling me is there's not clear case law on point, then that means you lose under 2254, as I understand it. Your Honor, that's why I'm asking the court to use its discretion to amend the record on that issue. Which is why I asked the question a moment ago, which is if we can't do that, then you lose, right? I can't say that we lose, Your Honor. But I would like to move on to the second claim about whether it was a technicality of the controlled substances that were used throughout the trial. The DA continually used the term opiates when there was no opiates in her blood. That was determined by the forensic examiner. Your Honor, underneath, Allen v. State allows the state to try someone for murder by DUI. She was not driving an influence-controlled substance. I mean, it's very clear. It was clear before she was charged with the crime. It was clear at the trial that the evidence, the forensic toxicologist report, only shows prescription medications, all in therapeutic doses. If she was not under DUI by a controlled substance. I thought there was a rapid, maybe I'm misremembering this, but I thought there was a rapid drug screening that, in fact, showed opiates. Your Honor, there was a rapid drug screening that was performed four hours after the blood was taken. Her blood was taken two hours after the wreck. That UDS screening was four hours later. Dr. Cox, in his declaration, has stated that, and Mr. Weaver, the state's own toxicologist, has stated that there was no opiates in her system at the time of the wreck. That was not presented at trial. The court moved forward. The DA moved forward by presenting constant information that she had opiates in her system, which she did not. The state's own evidence proved that. To continue to make that statement is presentation of false evidence. Reckless murder is only reckless by a matter of degree. One of the things we can't do, though, is we can't relitigate what state law requires. The Court of Criminal Appeals said that the controlled substance is not an element. It can be evidence of recklessness. We're stuck with how the state court determines state law. I would agree, Your Honor. However, what I am saying is that under Miller v. Pate, the presentation of the evidence was false. You're not stuck with the state's determination on state law if the evidence that was presented didn't actually occur. Okay. Clock's got you. You've saved five minutes for rebuttal. Let's hear from Mr. Boudry. Yes, sir. Thank you, Your Honor. May it please the Court, Barrett Boudry for the respondent. There are three discrete issues before the Court. There's the Fred issue, the sufficiency issue, the Martinez issue. We've only talked about two of them this morning, but if you want to talk about all of them. I am happy to only talk about two of those. My point is simply that all the evidence, Dr. Cox's report that my friend mentioned, Mr. Weaver's supplemental affidavit, all that was new evidence that Ms. Curry submitted to the district court in federal habeas in support of her reply brief. That is not before this Court. It was not because it was not before the state courts. As Judge Pryor, you pointed out, the question here is looking at the evidence that was before the state courts, was there an unreasonable determination of clearly established federal law? And the answer is that there was not. So looking at the FREDA claim, my friend said at the very beginning that the January transcript was dispositive to that claim. If that is true, I don't think that is true. But if that is true, that means that looking at the evidence that the Alabama courts had was necessarily sufficient, or at the very least was not an unreasonable determination of federal law under FREDA. Looking at the sufficiency claim, I want to point out there is no Miller claim here. There is no Napu type claim. It's simply sufficiency of the evidence under Jackson v. Virginia. Could any reasonable trier fact find the essential elements of the crime as established by Alabama state law? I think Ms. Curry's claim is really a dispute with the Court of Criminal Appeals about what Alabama state law requires. That's not a question for this court. Under that law, I think the Court of Criminal Appeals was correct to find and had an evidentiary basis to find that there was plenty of evidence, sufficient evidence, for a reasonable juror to find as these 12 jurors did and find Ms. Curry guilty of reckless murder. Unless there are any questions, I'm happy to sit down at this point. Thank you very much. I don't hear any, Mr. Boundary. Mr. McIntyre, you saved some time for rebuttal. Thank you, Your Honor. Under the Jackson standard, the trier fact could not make a reasonable determination of the evidence because the evidence presented to it was not correct. Reckless murder by DUI is not reckless murder by DUI if the evidence is that there was no opiates in her system, there was no controlled substance of any type in her system. That was central to the state's case. The DA constantly used that information throughout his presentation to the jury. We do not have the record from the opening and closing statement, but it can be inferred he used it there as well. During the sentencing argument, he specifically referred to her voluntarily driving under DUI four times. That was central to their case. This isn't a quote-unquote Miller claim, but in response to The COA identifies this as a sufficiency issue, Jackson issue, not as a false evidence issue, not as a Miller issue. Yes, Your Honor, and that's what I was just about to get to. In response to that COA that it's a quote-unquote technicality, it's not just a technicality, it's more than that. It's a representation that something happened that did not occur. She was not driving under the influence of controlled substance, and she certainly was not driving under the influence of opiates. To get to that level, even in the state's response to us, the state said that perhaps she could have been found guilty of manslaughter, but they don't mention that she could have been tried and convicted for reckless murder. She has a life sentence for reckless murder for driving under the influence of DUI. She was not doing that. Some sort of relief would be appropriate. Otherwise, her life has literally been forfeited to ineffective counsel and an overreach by the district attorney. Thank you, Your Honor. Thank you, Mr. McIntyre. We understand the case.